UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


MARK L. WEBB,

            Plaintiff,

v.                                        Civil Action No. 2:09-0813

APPALACHIAN POWER COMPANY d/b/a
AEP APPALACHIAN POWER,

            Defendant.


MEMORANDUM OPINION AND ORDER


        Pending is (1) defendant Appalachian Power Company's

("APCo") motion for summary judgment, filed April 5, 2010, and

(2) APCo's motion in limine to prohibit plaintiff from presenting

evidence of emotional distress or mental anguish, filed August 2,

2010.

I.  Background


        On or around December 5, 2008, plaintiff Mark L. Webb,

a truck driver employed in a temporary capacity by Headwaters

Resources, Inc. ("Headwaters"), was operating a dump truck at a

plant owned by defendant APCo.[1]  (Compl. ¶¶ 3, 5; Resp. 2).

Headwaters had assigned plaintiff to haul coal ash, called "fly

_____

        [1]  Plaintiff's complaint states that December 5, 2008, is
the date of the incident, while the incident report and
plaintiff's response state the date was December 3, 2008.

ash," out of defendant's property. (Resp. 2). In carrying out his assignment, plaintiff had to pass through security gates on defendant's property. (Resp. 3). Security guards employed by defendant operate these security gates remotely, raising the gates either when the guard sees that a vehicle needs to pass through or when a driver requests entry by radio contact. (Id.). Once the gates are raised, three sensors on the gate and the roadway ensure that the gate remains raised until the vehicle has completely passed through the gateway. (Id.).

On the date of the incident, plaintiff approached defendant's security gate in the dump trunk. Plaintiff claims that the gate arm was in the raised position at this time. (Resp. 5). The security guard on duty, however, denied having raised the gate or even seeing plaintiff's truck. (Resp. 5-6). According to plaintiff, as he proceeded to drive through the gateway the gate arm closed on the truck. (Compl. ¶ 5). The collision caused damage to the security gate and minimal damage to the truck. (Id.). Following the incident, defendant's plant manager advised another one of defendant's employees to contact Headwaters and to prohibit plaintiff from returning to defendant's plant. (Def.'s Mot. Summ. J. 6). After having been informed that plaintiff was disallowed from continuing work at

2

the defendant's plant, Headwaters terminated plaintiff's employment.  (Resp. 2).

On June 15, 2009, plaintiff instituted this action in the Circuit Court of Kanawha County.  Defendant removed on July 16, 2009, invoking the court's diversity jurisdiction.  The complaint alleges that, as a result of APCo's negligence, (1) "plaintiff was terminated and has suffered loss of earnings and earning capacity," and (2) "plaintiff has endured pain and suffering, mental anguish and emotional distress, annoyance and inconvenience and the loss of ability to enjoy life."  (Compl. ¶¶ 8-9).  Plaintiff "demands judgment against the defendant for punitive, compensatory and general damages in an amount to be set by the jury or the Court, along with costs, attorney fees and any other relief the Court finds that is equitable or allowed by law."  (Id. 3).[2]

On April 5, 2010, defendant moved for summary judgment based on the following grounds: (1) plaintiff, as an at-will employee, cannot recover from a third party for his termination, (2) plaintiff has not plead a claim for tortious interference

---

[2]    In a memorandum opinion and order dated December 3, 2010, the court granted APCo's motion in limine to prohibit plaintiff from offering any evidence or testimony on the issue of punitive damages or APCo's net worth.  (Doc. No. 62).

3

because he has not shown that APCo's conduct was intentional,
that APCo used improper methods, or the existence of a
contractual relationship between APCo and plaintiff, and (3)
plaintiff's claim for emotional distress fails because he has not
shown that APCo's conduct was outrageous.  (See Mem. Supp. Mot.
Summ. J. 2-11).

On September 28, 2010, APCo filed a third party
complaint against plaintiff's former employer, Headwaters.  By
order dated November 3, 2010, the court granted Headwaters'
motion to continue.  The order extended, inter alia, the deadline
for filing dispositive motions to March 14, 2011.  Pursuant to
the parties' stipulation of dismissal, the third party action
between APCo and Headwaters was dismissed on February 11, 2011.

II.  Motion for Summary Judgment

A.   Governing Standard

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those

necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.    Tortious Interference

The parties disagree as to the precise nature of plaintiff's claims.  In moving for summary judgment, defendant characterizes the complaint as asserting a claim for tortious interference with an employment relationship.  Plaintiff responds by stating that this is a negligence action, not an employment action.  Plaintiff further clarifies that, for the purposes of this action, Headwaters' termination of his employment is an

5

element of his damages rather than a basis for a tortious interference claim.  (<u>Id.</u> 1).

Because plaintiff insists that this is a negligence cause of action and does not respond to defendant's arguments relating to tortious interference, the court concludes that plaintiff has not pled a claim for tortious interference.  And so, to the extent that defendant moves for summary judgment as to plaintiffs' claim for tortious interference, the motion is granted.


C.   At-Will Employment

Defendant contends that since plaintiff was an at-will employee of Headwaters he had no expectation of "permanent employment" and thus has no claim against APCo as a matter of law.  Defendant cites no authority for this proposition insofar as it relates to a third party such as APCo.  To the extent that defendant moves for summary judgment on the grounds that plaintiff was an at-will employee, the motion is denied without prejudice.

D.    Negligence

        Plaintiff summarizes his negligence theory as follows:

> APCO owed a legal duty to Mr. Webb to have a properly
> functioning gate that would not come down and strike his
> truck. This duty was especially important, because the
> breach of said duty could result in the termination of an
> unwary victim. In this instance, APCO's gate failed and
> Mr. Webb lost his job as a result. Thus, Mr. Webb
> sustained economic loss as a direct consequence of the
> failed gate.

(Resp. 10).  Defendant asserts that this negligence theory must

fail inasmuch as "[p]laintiff has not identified a single piece

of evidence to suggest that the gate was not functioning

properly."  (Reply 3).  In any event, defendant contends, how or

why the gate incident occurred is immaterial because West

Virginia law does not support plaintiff's theory of liability.

        Upon reviewing the briefings, it appears that the

parties have not developed basic issues concerning plaintiff's

negligence claim -- including the existence of a legal duty, the

scope of that duty, and proximate causation -- which may be

determinative of defendant's liability.  As noted, the court has

extended the dispositive motion deadline to March 14, 2011.  In

view of the incomplete briefing with respect to plaintiff's

negligence theory and the modification of the scheduling order

deadlines, the court concludes that defendant's motion for

7

summary judgment as to plaintiff's negligence claim should be denied without prejudice so that the issue can be presented anew.

E.   Emotional Distress

In his complaint, plaintiff asserts that as a result of defendant's acts he "has endured pain and suffering, mental anguish and emotional distress, annoyance and inconvenience and the loss of ability to enjoy life."  (Compl. ¶ 9).  Defendant maintains that any claim for intentional infliction of emotional distress that plaintiff may be asserting must fail because there is no evidence that its conduct was extreme enough to meet the standard for such a claim under West Virginia law.  (Def.'s Mem. Supp. Mot. Summ. J. 10); see Syl. Pt. 7, Hatfield v. Health Management Associates of West Virginia, 223 W. Va. 259, 672 S.E.2d 395 (2008) (quoting Syl. Pt. 3, Travis v. Alcon Labs., Inc., 202 W. Va. 369, 504 S.E.2d 419 (1998)).

The complaint appears to reference emotional distress merely as an element of damages claimed by plaintiff.  While the complaint does not appear to present a claim of intentional infliction of emotional distress, the court concludes in any event that the "outrageous conduct" standard required for such a claim is not met.  To the extent that defendant moves for summary

8

judgment as to an intentional infliction of emotional distress claim, the motion is granted.

### III.  Motion in Limine

In its motion in limine, APCo asks the court to prohibit plaintiff from presenting evidence of emotional distress or mental anguish as an element of damages.  APCo asserts that a plaintiff in West Virginia cannot recover emotional distress damages absent a physical injury.  Because plaintiff does not claim that he or any other person incurred physical injuries as a result of APCo's alleged misconduct, APCo maintains that plaintiff should be prohibited from presenting evidence regarding his emotional distress.  In response, plaintiff contends that West Virginia courts permit plaintiffs to recover emotional distress damages arising out of terminations of employment.

In <u>Ball v. Joy Tech., Inc.</u>, 958 F.2d 36 (4th Cir. 1991), cert. denied, 502 U.S. 1033 (1992), our court of appeals stated the then-existing law on the recovery of emotional distress damages:

> Courts in West Virginia . . . have recognized that damages for emotional distress may be recovered in three specific instances: (1) where the emotional disturbance results from an actual physical injury caused by the impact or occurrence of the tort; (2) where there is no initial impact or injury but physical injury thereafter

9

results as the causal effect of the defendant's wrong;
and (3) where there is no impact or physical injury but
emotional disturbance results from an intentional or
wanton wrongful act caused by the defendant.

Id. at 39 (citations omitted) (emphasis added). Subsequent to

Ball, West Virginia courts have permitted plaintiffs to recover

emotional distress damages in negligent infliction of emotional

distress cases wherein the plaintiff witnesses a close relative

incur a critical or fatal injury as a result of the defendant's

negligence, even if the plaintiff's distress did not result in a

physical injury. See Syl. Pt. 1, Heldreth v. Marrs, 188 W. Va.

481, 425 S.E.2d 157 (1992). Further, the West Virginia Supreme

Court of Appeals has held that a plaintiff alleging retaliatory

discharge may recover emotional distress damages as part of a

compensatory damages award. See Syl. Pt. 3, Harless v. First

National Bank in Fairmont, 169 W. Va. 673, 289 S.E.2d 692 (1982)

("The tort of retaliatory discharge carries with it a sufficient

indicia of intent, thus, damages for emotional distress may be

recovered as a part of the compensatory damages").

          Plaintiff has asserted no claim for which West Virginia

law permits a recovery of emotional distress damages. Inasmuch

as plaintiff alleges no physical injury, plaintiff could only

recover emotional distress damages in the context of an

intentional or negligent infliction of emotional distress claim

or a claim where emotional disturbance results from a wanton

wrongful act or from an intentional act, including retaliatory discharge.  Plaintiff has asserted none of these claims against APCo.  Accordingly, APCo's motion in limine is granted.

### IV.  Conclusion

For the foregoing reasons, the court ORDERS as follows:

1.    That defendant's motion for summary judgment with respect to plaintiff's tortious interference claim, if any, be, and it hereby is, granted.

2.    That defendant's motion for summary judgment on the grounds that plaintiff was an at-will employee of Headwaters be, and it hereby is, denied without prejudice.

3.    That defendant's motion for summary judgment with respect to plaintiff's claim, if any, for intentional infliction of emotional distress be, and it hereby is, granted.

4.    That defendant's motion for summary judgment with respect to plaintiff's negligence claim be, and it hereby is, denied without prejudice.

5.    That defendant's motion in limine to prohibit plaintiff from presenting evidence of emotional distress or mental anguish be, and it hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED:  February 24, 2011

John T. Copenhaver, Jr.
United States District Judge