UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


MARK L. WEBB,

          Plaintiff,

v.                                    Civil Action No. 2:09-0813

APPALACHIAN POWER COMPANY d/b/a
AEP APPALACHIAN POWER,

          Defendant.


MEMORANDUM OPINION AND ORDER


          Pending is defendant Appalachian Power Company's
("APCo") renewed motion for summary judgment on plaintiff's only
remaining claim, filed March 14, 2011.


I.  Background


          The following statement of facts is taken from the
court's memorandum opinion and order, entered February 24, 2011,
partly denying APCo's first motion for summary judgment without
prejudice.  (Doc. No. 71).

          Plaintiff Mark L. Webb was formerly employed, in a
temporary capacity, as a dump truck driver for Headwaters
Resources, Inc. ("Headwaters").  Headwaters had assigned Webb to
haul coal ash, called "fly ash," out of APCo's Kanawha River

Plant. In carrying out his assignment, Webb had to pass through security gates at the entrance of APCo's property. Security guards employed by APCo operate these security gates remotely, raising the gates either when the guard sees that a vehicle needs to pass through or when a driver requests entry by radio contact. Once the gates are raised, three sensors on the gate and the roadway ensure that the gate remains raised until the vehicle has completely passed through the entryway.

On December 5, 2008, Webb approached APCo's security gate in his dump trunk. He claims that the gate arm was in the raised position at this time. The security guard on duty, however, denied having raised the gate or even seeing Webb's truck. According to Webb, as he proceeded to drive through the gateway, the gate arm closed on the truck. The collision caused damage to the security gate and minimal damage to the truck. Following the incident, APCo informed Headwaters that Webb was prohibited from returning to work at its plant. Headwaters, upon hearing this news, terminated Webb's employment.

On June 15, 2009, Webb instituted this action in the Circuit Court of Kanawha County. APCo removed on July 16, 2009, invoking the court's diversity jurisdiction. The complaint alleges that, as a result of APCo's negligence, (1) "plaintiff

was terminated and has suffered loss of earnings and earning capacity," and (2) "plaintiff has endured pain and suffering, mental anguish and emotional distress, annoyance and inconvenience and the loss of ability to enjoy life." (Compl. ¶¶ 8-9). Plaintiff "demands judgment against the defendant for punitive, compensatory and general damages in an amount to be set by the jury or the Court, along with costs, attorney fees and any other relief the Court finds that is equitable or allowed by law." (Id. 3).

On April 5, 2010, APCo moved for summary judgment based on the following grounds: (1) plaintiff, as an at-will employee, cannot recover from a third party for his termination, (2) plaintiff has not pled a claim for tortious interference because he has not shown that APCo's conduct was intentional, and (3) plaintiff's claim for emotional distress fails because he has not shown that APCo's conduct was outrageous. Webb responded to the motion by arguing that APCo misapprehended his claim, and that this was a negligence action rather than an employment action.

In its memorandum opinion and order dated February 24, 2011, the court noted the parties' disagreement over Webb's theory of liability and the consequent lack of briefing on his negligence claim. The court also pointed out that the scheduling

3

order deadlines had recently been extended.  Accordingly, the court denied APCo's motion as to Webb's negligence claim, without prejudice, so that the issue could be presented anew.

APCo renewed its motion for summary judgment on March 14, 2011.  In support of its renewed motion, APCo asserts that Webb cannot satisfy the elements of a negligence claim under West Virginia law.  (Def.'s Renewed Mot. Summ. J. 1-3).  Webb responded to APCo's motion on March 25, 2011, to which APCo replied on April 1, 2011.

## II.  Motion for Summary Judgment

### A.   Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

B.    Negligence

        To establish a <u>prima facie</u> case of negligence, the plaintiff must show "that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." <u>Neely v. Belk, Inc.</u>, 668 S.E.2d 189, 197 (W. Va. 2008) (quoting <u>Strahin v. Cleavenger</u>, 603 S.E.2d 197, 205 (W. Va. 2004)).  Thus, "the threshold question in all actions in negligence is whether a duty was owed." <u>Neely</u>, 668 S.E.2d at 197 (quoting <u>Strahin</u>, 603 S.E.2d at 205).  "No action for negligence will lie without a duty broken."  Syl. Pt. 1, <u>Parsley v. General Motors Acceptance Corp.</u>, 167 W. Va. 866, 280 S.E.2d 703 (1981).  The determination of whether there is a duty is a question of law rather than a question of fact for the jury.  Syl. Pt. 1, <u>France v. Southern Equip. Co.</u>, 689 S.E.2d 1 (W. Va. 2010) (quoting Syl. Pt. 5, <u>Aikens v. Debow</u>, 541 S.E.2d 576 (2000)).

        1.    Recovery for Economic Loss in the Absence of Physical
              Injury or Property Damage

        APCo asserts that Webb's negligence claim fails as a matter of law because of the economic loss rule.  Webb does not respond to this contention.

The West Virginia Supreme Court of Appeals follows the "well settled general rule against permitting recovery in negligence for purely economic damages." Eastern Steel Constructors, Inc. v. City of Salem, 549 S.E.2d 266, 272 (W. Va. 2001). It has, however, recognized an important limitation to this rule. As the court recently stated, "our law allows a negligence claim for purely economic losses when . . . there is evidence of a 'special relationship' between the plaintiff and the defendant." White v. AAMG Const. Lending Ctr., 700 S.E.2d 791, 798 (W. Va. 2010). This doctrine first emerged in Aikens v. Debow, where, "[a]fter thoroughly considering the intricacies of a potential rule permitting the recovery of economic damages absent physical or personal injury," the court held as follows:

> An individual who sustains economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor.

Syl. Pt. 9, Aikens v. Debow, 541 S.E.2d 576, 590 (2000). The court reached this conclusion upon finding that "the common thread which permeates the analysis of potential economic recovery in the absence of physical harm is the recognition of

6

the underlying concept of duty.  Absent some special relationship, the confines of which will differ depending upon the facts of each relationship, there simply is no duty."  Id. at 590; see also Eastern Steel, 549 S.E.2d at 272 ("recovery of economic damages should be allowed in certain meritorious claims when an adequate barrier against limitless liability, such as the existence of a special relationship, can be identified").

Here, it is undisputed that Webb seeks recovery only for economic losses, and that he claims no harm to his person or property.  (See Pl.'s Resp. 5 (arguing that "Webb sustained economic loss as a direct consequence of the failed gate.").  Webb conceded as much in a discovery response:

> Interrogatory No. 2: Please identify each and every item of damage, whether special, general, compensatory, punitive, real, personal, tangible or intangible, arising in the past, present or future or any other type or nature whatsoever, and any other type, item or nature of recovery which Plaintiff claims to have suffered in this action.  For each item of damage identified in response to this Interrogatory, please state further the nature of the damage, the date on which it was suffered or incurred, its amount, and the means or method by which it is calculated or computed.

> Answer to Interrogatory No. 2: Mr. Webb lost wages and benefits associated with his employment.

(Def.'s Renewed Mot. Summ. J., Ex. G).  Nor does Webb assert that

7

there was any contractual[1] or special relationship between him and APCo permitting recovery for purely economic losses.  Even assuming he had raised the special relationship doctrine, the court's independent review of the caselaw reveals that the doctrine has only been applied in a narrow set of cases, none of which appear applicable here.  See, e.g., Eastern Steel, 549 S.E.2d at 266 (finding special relationship between design professional and contractor where contractor was required to rely on professional's work product in carrying out contractual obligations to project owner); Glascock v. City Nat. Bank of West Virginia, 576 S.E.2d 540 (W. Va. 2002) (finding special relationship and consequent duty to disclose adverse information where lender making construction loan to a borrower maintained oversight of and intervened in construction process); but see White, 700 S.E.2d at 791 (distinguishing Glascock and finding no special relationship between borrower and lender where lender did not inspect borrower's home to assess its integrity or withhold information about home's quality); cf. Bragg v. United States, -- F. Supp. 2d --, 2011 WL 482835, at *10 (S.D. W. Va. 2011) (surveying caselaw and noting that "the supreme court of appeals appears reluctant to extend the special relationship doctrine").

---

[1]     It is undisputed that Webb was employed by Headwaters and that Headwaters was an independent contractor of APCo.

Inasmuch as Webb seeks to recover economic damages in the absence of physical harm to person or property, a contractual relationship with APCo, or a special relationship, the court concludes that his negligence claim is foreclosed by West Virginia's economic loss rule.

2.   Negligent Interference

While a straightforward application of the economic loss rule is fatal to Webb's claim, there is another basis for granting summary judgment for APCo.  One component of Webb's theory of liability is that APCo directed Headwaters to terminate his employment.  (See Pl.'s Resp. 6 ("Webb's termination . . . [was] actually carried out by a third party at the direction of APCO")).  As set forth in the court's February 24, 2011 memorandum opinion and order, though, Webb conceded that he has not pled or asserted a claim for intentional interference with an employment relationship, and the court accordingly granted summary judgment in APCo's favor "with respect to plaintiff's tortious interference claim, if any."  (Doc. No. 71).  Webb has not, moreover, asserted any other type of intentional tort claim. He has instead maintained throughout this case that "this is a negligence cause of action."  (Pl.'s Resp. to APCo's First Mot. Summ. J. 1 (Doc. No. 31)).

9

Yet allowing Webb to pursue a negligence claim against APCo for influencing Headwaters to fire him would be tantamount to permitting a claim for negligent interference with an employment relationship, for which there is no cause of action in West Virginia.  See Syl. Pt. 2, Torbett v. Wheeling Dollar Sav. & Trust Co., 314 S.E.2d 166 (W. Va. 1983) (listing the required elements for a claim of tortious interference with a contractual or business relationship as including "an intentional act of interference," and stating that "[d]efendants are not liable for interference that is negligent rather than intentional").

Indeed, as a logical outgrowth of the economic loss doctrine, courts have generally declined to impose liability for negligent interference with a business relationship in the absence of physical harm.  These courts have often relied upon Restatement (Second) of Torts § 766C, which denies liability for mere negligent interference with a contractual relationship that results only in pecuniary loss.  See, e.g., Edens & Avant Inv. Prop., Inc. v. Amerada Hess Corp., 456 S.E.2d 406 (S.C. Ct. App. 1995) ("South Carolina, like the majority of states, has not recognized a cause of action for the recovery of pure pecuniary harm resulting from a tortfeasor's negligent interference with the plaintiff's contractual relationships, and we decline to do so." (citing Restatement (Second) of Torts § 766C)); Aikens v.

<u>Baltimore & Ohio R.R. Co.</u>, 501 A.2d 277, 278 (Pa. Super. 1985) (adopting Restatement § 766C and holding that "recovery for purely economic loss occasioned by tortious interference with contract or economic advantage is not available under a negligence theory."); <u>Local Joint Exec. Bd. v. Stern</u>, 651 P.2d 637, 638 (Nev. 1982) (same); <u>see</u> <u>also</u> Restatement (Second) of Torts § 766C cmt. a (noting that courts generally have not permitted liability for negligent interference).

The Third Circuit Court of Appeals has explained the reasoning underlying the reluctance of courts to recognize such liability:

> [I]t is the character of the contract or prospective interest itself that has led courts to refuse to give the interest protection against negligent interference. [Restatement (Second) of Torts § 766C cmt. a]. The extremely variable nature of the relations between the parties, the fear of an undue burden upon the defendant's freedom of action, the probable disproportion between the large damages that might be recovered and the extent of the defendant's fault, and perhaps in some cases the difficulty of determining whether the interference has in fact resulted from the negligent conduct, all have influenced the courts against permitting recovery. <u>Id.</u>

<u>Getty Ref. and Mktg. Co. v. MT Fadi B</u>, 766 F.2d 829, 832 (3d Cir. 1985).

In view of the foregoing authority, the court declines to impose negligence liability upon APCo based on its alleged interference with Webb's employment relationship with Headwaters.

### III.   Conclusion

For the foregoing reasons, the court ORDERS that APCo's renewed motion for summary judgment be, and it hereby is, granted.[2]

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: April 29, 2011

John T. Copenhaver, Jr.
United States District Judge

------

[2]   The court's disposition obviates the need to address APCo's remaining grounds for summary judgment.

12